## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

DAVID TOM, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

LEAD GENESIS PARTNERS, LLC,

     Defendant.

_____/

CIVIL ACTION FILE NO.

**COMPLAINT – CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiff DAVID TOM (hereinafter referred to as "Plaintiff"), individually
and on behalf of all others similarly situated, allege on personal knowledge,
investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      Telemarketing calls are intrusive. A great many people object to these
calls, which interfere with their lives, tie up their phone lines, and cause confusion
and disruption on phone records. Faced with growing public criticism of abusive
telephone marketing practices, Congress enacted the Telephone Consumer
Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47
U.S.C. § 227). As Congress explained, the law was a response to Americans
'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.      Tom also alleges that Lead Genesis uses automated systems to make telemarketing calls from and into Florida, and that by doing so, Lead Genesis has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

7.      Plaintiff David Tom is an individual located in the Middle District of Florida, in Brevard County.

8.      Defendant Lead Genesis Partners, LLC is a Las Vegas, Nevada company that makes telemarketing calls into this District for various solar companies, including ADT Solar.

**JURISDICTION AND VENUE**

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

10.      This Court has specific personal jurisdiction over Lead Genesis because Lead Genesis directed its conduct into this State and District. Specifically, it knowingly called telephone numbers with area codes associated with the State of Florida, including Plaintiff's 321 area code. The calls also originated from "spoofed" caller IDs bearing the 321 area code to trick the called party into thinking that the caller was local.

11.      Venue is proper pursuant to 28 U.S.C. § 1391 because the telephone calls at issue were sent into this District.

## **TCPA BACKGROUND**

<u>The Enactment of the TCPA and its Regulations</u>

12.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

17.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. §
501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18.     It is a violation of the FTSA to "make or knowingly allow a
telephonic sales call to be made if such call involves an automated system for the
selection and dialing of telephone numbers or the playing of a recorded message
when a connection is completed to a number called without the prior express
written consent of the called party." Fla. Stat. § 501.059(8)(a).

19.     A "telephonic sales call" is defined as a "telephone call, text message,
or voicemail transmission to a consumer for the purpose of soliciting a sale of any
consumer goods or services, soliciting an extension of credit for consumer goods
or services, or obtaining information that will or may be used for the direct
solicitation of a sale of consumer goods or services or an extension of credit for
such purposes." Fla. Stat. § 501.059(1)(i).

20.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a
minimum of $500.00 for each violation.

## **FACTUAL ALLEGATIONS**

21.     Defendant Lead Genesis is a "person" as the term is defined by 47
U.S.C. § 153(39). Plaintiff Tom is also a "person" as the term is defined by 47
U.S.C. § 153(39).

22.     At no point has the Plaintiff consented to receive telemarketing calls from the Defendants regarding the sale of goods or services, including solar panels, prior to receiving the pre-recorded calls at issue.

Calls to Plaintiff

23.     Mr. Tom's residential telephone number is (321) XXX-XXXX.

24.     That telephone number is a residential telephone line used by Mr. Tom for personal calls and for personal, family, and household use.

25.     The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

26.     That telephone number is not associated with a business.

27.     Despite that, Mr. Tom received at least 3 automated calls from various "spoofed" caller IDs all beginning with the 321 or 908 area codes, between December and January of 2023 and 2024.

28.     With respect to the calls in December and January of 2023 and 2024, the Plaintiff received multiple calls from various caller IDs from callers claiming to be from the illegally-fictitiously named entity "Florida Green Energy."

29.     Each call started with silence before a "bloop" sound and an agent joining the line. This sound is indicative of the ViciDial autodialer and is officially known as the "droplet" sound. It is played automatically as part of a macro when

the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and a call center representative.

30.     Furthermore, ViciDial comes programmed as standard to be able to randomize telephone numbers and caller IDs. The fact that the caller IDs were randomized also lends credence to the inference that the Plaintiff's telephone number was also randomized and randomly or sequentially generated.

31.     The callers all called using identical or nearly identical scripts, including the fictious, generic, but unique name "Florida Green Energy."

32.     Plaintiff finally was able to identify the caller on January 2, 2024 at 17:05 when he received a call from the "spoofed" caller ID 908-428-4567 calling to sell him solar panels.

33.     When the Plaintiff attempted to identify the caller and for no other reason, the Plaintiff heard a message stating that Plaintiff's (321) XXX-XXXX telephone number was on the Do Not Call Registry.

34.     Plaintiff was forced to provide a callback number of 321-350-3304, a number not on the Do Not Call Registry, because the call could not be transferred because the (321) XXX-XXXX number was on the Do Not Call Registry.

35.     Nevertheless, the calls continued, this time to the 321-350-3304 number.

36.     Specifically, on January 12, 2024, at 19:21, the Plaintiff received a call from 321-225-0569 to the 321-350-3304 number indicating that the caller had a lead regarding the Plaintiff's alleged interest in solar panels from the previous week and was calling to follow up. During that call, the Plaintiff was transferred by Defendant to an agent of ADT Solar, who attempted to sell him solar panels.

37.     Plaintiff never consented to receive calls from Defendant or ADT Solar.

38.     Plaintiff never did business with the Defendant or ADT Solar.

39.     Prior to the filing of this complaint, counsel for Plaintiff reached out to ADT Solar to attempt to identify the source of the calls.

40.     Counsel for ADT Solar investigated the matter and were able to identify that the lead they purchased originated from Defendant Lead Genesis Partners, LLC.

41.     Based on the foregoing, it is evident that Defendant Lead Genesis Partners, LLC mass-dials calls indiscriminately, including to numbers on the Do Not Call Registry using the fictitious name "Florida Green Solar."

42.     However, because ADT Solar and Lead Genesis' other customers insist on obtaining legally sourced leads, Defendant Lead Genesis checks each number against the National Do Not Call Registry immediately prior to transfer, not immediately prior to making the illegal calls, as they are supposed to.

9

43.     In the event that a number is on the Registry, Defendant instructs its call center employees to obtain an alternative contact number for the party they called, which alternative number is not on the Do Not Call Registry.

44.     Defendant then calls that alternative number approximately a week later and acts as if the caller is just "following up" on a previously legitimate inquiry based on a contact to the alternative number. It does this to circumvent the Do Not Call Registry and hide the fact that it obtained the alternative number by mass-dialing and cold calling numbers, including those on the Registry.

45.     The aforementioned conduct is designed to avoid scrutiny from companies to whom it sells the leads if those companies identify the Defendant as calling numbers on the Do Not Call Registry.

46.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

47.     Plaintiff never provided his consent or requested these calls.

48.     The aforementioned calls to the Plaintiff were unwanted.

49.     The calls were nonconsensual encounters.

50.     In fact, the Plaintiff requested multiple times throughout various of the calls that the calls stop, but they did not stop.

51.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they

were annoyed and harassed. In addition, the calls occupied their telephone lines,

rendering them unavailable for legitimate communication, including while driving,

working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action on behalf of himself and the following

classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

53.     Plaintiff proposes the following Class definitions, subject to

amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States
> whose (1) residential telephone numbers were on the National Do Not Call
> Registry for at least 31 days, (2) but who received more than one
> telemarketing call from or on behalf of Lead Genesis, (3) within a 12-month
> period, (4) at any time in the period that begins four years before the date of
> filing this Complaint to trial.

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S.,
> who, (1) received a telephonic sales call from Lead Genesis regarding solar
> goods and/or services made from or to Florida, (2) using the same equipment
> or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

54.     Plaintiff is a member of and will fairly and adequately represent and

protect the interests of the Classes as he has no interests that conflict with any of

the class members.

55.     Excluded from the Classes are counsel, the Defendant, and any

entities in which the Defendant have a controlling interest, the Defendant's agents

and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

57.     This Class Action Complaint seeks injunctive relief and money damages.

58.     The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

59.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

60.     The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

61.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

62.     There are numerous questions of law and fact common to Plaintiff and

to the proposed Classes, including but not limited to the following:

> (a) Whether the Defendant used automatic equipment as defined by
> Florida law to send telemarketing calls;
>
> (b) whether Defendant made calls to Plaintiff and members of the
> Classes without first obtaining prior express written consent to
> make the calls;
>
> (c) whether Defendant's conduct constitutes a violation of the FTSA
> or TCPA; and
>
> (d) whether members of the Classes are entitled to treble damages
> based on the willfulness of Defendant's conduct.

63.     Further, Plaintiff will fairly and adequately represent and protect the

interests of the Classes.  Plaintiff has no interests which are antagonistic to any

member of the Classes.

64.     Plaintiff has retained counsel with substantial experience in

prosecuting complex litigation and class actions, and especially TCPA class

actions.  Plaintiff and his counsel are committed to vigorously prosecuting this

action on behalf of the other members of the Classes and have the financial

resources to do so.

65.     Common questions of law and fact predominate over questions

affecting only individual class members, and a class action is the superior method

for fair and efficient adjudication of the controversy.

66.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(b) on behalf of the Robocall Class**

67.     Plaintiff incorporates the allegations in paragraphs 1-66 as if fully set forth herein.

68.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class delivering automated messages.

69.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

71.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial
Class**

72.     Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-66 as if fully set forth herein.

73.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

74.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

75.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or

services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

76.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

77.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

78.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

79.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Defendant from calling telephone numbers advertising goods or services, except for emergency purposes, using a automated means in the future;

B.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

D.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.


Dated: February 29, 2024          PLAINTIFF, individually and on behalf of all others similarly situated,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.

237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Lead Counsel